IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 15-186 |
| | ) | Judge Nora Barry Fischer |
| WAVERLY PRIMM, | ) | |
| MARLIN SCOTT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

I.   **Introduction**

This matter is before the Court on a Motion to Suppress Title III Intercepts filed by Waverly Primm (Docket No. 168) and joined by Marlin Scott (Docket Nos. 215 and 216).[1] The Government opposes the suppression motion. (Docket No. 221). As the motion is fully briefed, it is now ripe for disposition. For the following reasons, the Motion to Suppress is DENIED.

II.  **Relevant Background**

This case is the result of a long-term Title III wiretap investigation conducted by the Drug Enforcement Administration ("DEA") and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") concerning crack cocaine trafficking in the area of New Castle, Pennsylvania. (*See* Docket No. 221, ¶ 1). The investigation revealed that Primm, Scott and

---

[1]   Co-defendants Duane Stokes and Octavious Lewis previously entered guilty pleas and have been sentenced. The deadline for co-defendant William Wilbon to file pretrial motions, if he chooses to do so, is October 23, 2017. (*See* Docket No. 243). However, the Court notes that this decision is equally applicable to Wilbon, regardless of whether he ultimately files a motion for joinder.

1

other co-conspirators allegedly obtained cocaine in Buffalo, New York and transported it to the Western District of Pennsylvania, where members of the drug trafficking organization distributed substantial quantities of crack cocaine in the New Castle area. *Id.*

In addition to a number of traditional investigative methods, the investigation involved Title III authorized interceptions of five cellular telephones (the "Target Telephones" or "TT") used by members of the organization. Authorization to intercept calls and text messages over the Target Telephones was received via five applications between May 2015 and August 2015. The applications are sealed and docketed at Misc. Nos. 15-360 and 15-360(a)-(d). (*See* Docket No. 221, ¶¶ 2-6). The materials supporting the applications are extensive, consisting of hundreds of pages of documents. In approving each application, the presiding judicial officers, the Hon. Joy Flowers Conti and the Hon. David David S. Cercone, found, *inter alia*, that there was probable cause to believe that the target subjects were involved in felony drug trafficking offenses; probable cause to believe that particular wire and electronic communications of those individuals concerning such offenses would be obtained through the interceptions; and, that it was "adequately demonstrated that normal investigative procedures have been tried with limited success, reasonably appear unlikely to further succeed if continued, or or are too dangerous to attempt." (*See e.g.*, Misc. No. 15-360(c), Order of 7/16/15, ¶¶ 3-5; Misc. No. 15-360(d), Order of 8/12/15, ¶¶ 3-5).

The initial Order at Misc. No. 15-360 entered on May 27, 2015, authorized the interception of TT#1 and TT#2. (*See* Docket No. 221, ¶ 2). The subsequent applications involved the following:

- Misc. No. 15-360(a) – Order entered on June 8, 2015, authorizing the interception of TT#3;
- Misc. No. 15-360(b) – Order entered on June 18, 2015, extending the interception of TT#2 and authorizing the interception of TT#4;

- Misc. No. 15-360(c) – Order entered on July 16, 2015, extending the interception of TT#4 and authorizing the interception of TT#5 (hereinafter, the "15-360(c) Order"); and,
- Misc. No. 15-360(d) – Order entered on August 12, 2015, extending the interception of TT#5 (hereinafter, the "15-360(d) Order").

(*See id.*, ¶¶ 3-6). DEA Special Agent Melissa Laukaitis, who has conducted and participated in numerous federal drug trafficking investigations during her 12 years of employment with the DEA, completed the Affidavit in support of the Application at Misc. Nos. 15-360(c) and 15-360(d) (hereinafter, the "15-360(c) Aff." and the "15-360(d) Aff."). As is generally the case with these types of investigative materials, the subsequent affidavits build on the earlier ones, providing additional information obtained from the intercepted communications pursuant to the prior applications as support for the requested extension or initiation of intercepts on a new phone. (*See generally*, 15-360(c) Aff., ¶ 7; 15-360(d) Aff., ¶ 7).

The investigation ultimately resulted in an indictment against Primm, Scott and co-defendants Wilbon, Stokes and Lewis charging them with conspiracy to possess with intent to distribute and distribute 280 grams or more of crack cocaine from in and around January 2015, until in and around August 2015, in violation of 21 U.S.C. § 846. (*See* Docket No. 1).

On August 12, 2016, Primm, joined by Scott, moved to suppress the interceptions obtained pursuant to the 15-360(c) Order involving TT#4 and TT#5, and those obtained pursuant to the 15-360(d) Order involving TT#5.[2] (*See* Docket Nos. 168, 215, 216).

---

[2] TT#4 was associated with Scott and TT#5 was associated with Primm. (*See* 15-360(c) Aff., ¶¶ 8.a., 8.b.; 15-360(d) Aff., ¶ 8.a.). Defendants otherwise do not seek to suppress the interceptions obtained pursuant to the Orders entered at Misc. Nos. 15-360, 15-360(a) and 15-360(b).

3

### III. Motion to Suppress Title III Intercepts

Primm contends that suppression of the wiretap interceptions is warranted because the Affidavits supporting the Applications "fail[ ] to allege with requisite specificity the necessity of the interceptions."[3] (Docket No. 168, ¶ 6). Primm claims that the Affidavits demonstrate "the efficiency and success of the investigation and how the normal and traditional investigative methods had been successful." (*Id*. ¶¶ 14, 26). According to Primm, the Government had obtained some information through traditional investigative methods, thus it was simply "seeking a shortcut" by listening to telephone calls so that it could "expand and enlarge the endless dragnet and ensnare an ever growing number of persons who might be using a telephone." (*Id*. ¶¶ 25, 29, 31). As stated, Scott has joined in the motion, but he has not submitted any brief or otherwise further advanced this argument. In opposition, the Government contends that the analysis of necessity in the two Affidavits "was more than sufficient to meet the minimal burden established by 18 U.S.C. § 2518 and to inform the Court why other methods of investigation were not sufficient to meet the goals of the investigation or were too dangerous to attempt." (Docket No. 221, ¶ 41). For the following reasons, and consistent with this Court's decision in *United States v. Gardenhire*, Crim. No. 15-87, 2017 WL 1105733, at *7-*8 (W.D. Pa. Mar. 24, 2017), addressing the issue of necessity, the motion to suppress the Title III intercepts is denied.

---

[3] In connection with his argument, Primm asserts that the Affidavits lack probable cause because they fail to properly establish the necessity requirement. (*See* Docket No. 168, ¶ 8). Primm does not generally contend that probable cause is lacking; i.e., he does not argue that the Affidavits fail to demonstrate a fair probability that evidence of drug trafficking would be obtained through the intercepted communications. Rather, Primm's suppression motion focuses solely on the claim that the Government failed to establish necessity for its wiretaps. Accordingly, the Court construes Primm's challenge to relate only to that issue.

A. **Legal Standard**

Pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq., wire, oral, and electronic communications may be intercepted by law enforcement on a showing that there is probable cause that (1) an individual is committing a particular offense; (2) that relevant communications will be obtained through the interception; and (3) that the premises where the interception will be made are being used in connection with the charged offense. 18 U.S.C. § 2518(3). In addition, a wiretap application must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Id.* § 2518(1)(c). Thus, in order to lawfully grant an application for a wiretap, the issuing judge must find a wiretap to be necessary, which requires that the application explain why "normal investigative techniques would be of no avail." *United States v. Hendricks*, 395 F.3d 173, 180 (3d Cir. 2005) (internal quotation marks and citation omitted).

*United States v. Garvey*, 588 F. App'x 184, 190 (3d Cir. 2014). "When a warrant is later challenged, a deferential standard of review is applied in determining whether the issuing judge had a 'substantial basis' for issuing the warrant." *United States v. Gilliam*, No. 02:12-CR-93, 2015 WL 5178197, at *14 (W.D. Pa. Sept. 4, 2015) (citing *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993); *Illinois v. Gates*, 462 U.S. 213, 237 (1983)). Further, where, as here, a motion challenges the four corners of an affidavit and application, an evidentiary hearing is not required. *Gilliam*, 2015 WL 5178197, at *14.

The Court of Appeals has made clear that "18 U.S.C. § 2518(3)(c) does not require the government to exhaust all other investigative procedures before resorting to electronic surveillance." *United States v. Williams*, 124 F.3d 411, 418 (3d Cir. 1997); *see also United States v. Rivera*, 532 F. App'x 304, 307 (3d Cir. 2013) (quoting same).

> "The government need only lay a 'factual predicate' sufficient to inform the judge why other methods of investigation are not sufficient." *United States v. McGlory*, 968 F.2d 309, 345 (3d Cir.) (quoting *United States v. Armocida*, 515 F.2d 29, 38 (3d Cir.), *cert.*

> *denied sub nom., Conti v. United States*, 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975)); *cert. denied sub nom., Hauser v. United States*, 506 U.S. 956, 113 S.Ct. 415, 121 L.Ed.2d 339 (1992). Furthermore, in determining whether this requirement has been satisfied, a court "may properly take into account affirmations which are founded in part upon the experience of specially trained agents." *United States v. Ashley*, 876 F.2d 1069, 1072 (1st Cir. 1989); *see also United States v. Landmesser*, 553 F.2d 17, 20 (6th Cir.), *cert. denied*, 434 U.S. 855, 98 S.Ct. 174, 54 L.Ed.2d 126 (1977). "The government's showing is to be 'tested in a practical and commonsense fashion.'" *McGlory*, 968 F.2d at 345 (quoting *United States v. Vento*, 533 F.2d 838, 849 (3d Cir.1976)).

*Williams*, 124 F.3d at 418.

### B. Discussion

After careful consideration of the parties' positions, it is this Court's opinion that Primm and Scott have failed to demonstrate that the wiretap interceptions should be suppressed under the prevailing law governing same.

Initially, the Court holds that the judicial findings by her colleagues as to the existence of probable cause and the necessity of the wiretaps under 18 U.S.C. § 2518 are entitled to deference and otherwise have not been undermined by the arguments advanced by Defendants. *See Gilliam*, 2015 WL 5178197, at *14. As stated, Defendants generally assert that the Government had been successful in obtaining some information through traditional investigative methods, thus it was just seeking a "shortcut" by resorting to the wiretap interceptions. (*See* Docket No. 168, ¶¶ 14, 25, 26, 29, 31). Contrary to Defendants' position, however, the Government simply is not required to exhaust all potential investigative methods before obtaining a wiretap. *See Williams*, 124 F.3d at 418. The Court of Appeals has succinctly addressed this issue:

> [E]ven where normal investigative techniques might have been sufficient to implicate the conspiracy leader in drug trafficking, such approaches are sometimes insufficient to determine the scope of the conspiracy or the nature of the conspiracy leader's on-going criminal activity. . . . In the proper circumstances, the

6

instrumentalities of Title III may be employed to discover the full extent of crimes and conspiracies.

*United States v. Bailey*, 840 F.3d 99, 116 (3d Cir. 2016) (internal quotations and citations omitted).

Here, the information provided by Special Agent Laukaitis in the Affidavits makes clear that the Government did not seek to shortcut its investigation by using wiretaps, despite Defendants' assertion to the contrary. The Affidavits precisely describe the traditional investigative methods law enforcement had utilized, as well as the limitations associated with each, and further explain why certain methods would prove fruitless or were too dangerous to attempt. Although the Affidavits detail some limited success through the use of traditional methods, they clearly articulate that those methods would not enable law enforcement to ascertain the full scope of the drug trafficking organization or the identity of its members. Specifically, the Affidavits indicate the following:

- Although confidential sources had been used and would continue to be used, there were limitations with respect to each source, which would make it impossible for them to obtain and furnish information about the full scope of the drug trafficking organization and how it operates. (*See* 15-360(c) Aff., ¶¶ 50-62; 15-360(d) Aff., ¶¶ 59-73).

- Physical surveillance had been conducted, but it was insufficient to uncover the full scope of the organization because the targets were acutely conscious of the presence of law enforcement. (*See* 15-360(c) Aff., ¶¶ 63-76; 15-360(d) Aff., ¶¶ 74-89).

- Agents had limited ability to make controlled purchases of crack cocaine from members of the organization, thus the use of controlled purchases would not be sufficient to achieve successful prosecution of the organization as a whole. (*See* 15-360(c) Aff., ¶¶ 77-80; 15-360(d) Aff., ¶¶ 90-93).

- No attempt had been made to introduce an undercover agent into the organization because it was deemed unlikely to succeed or too dangerous to attempt in view of the tight-knit nature of the drug trafficking organization. (*See* 15-360(c) Aff., ¶¶ 83-84; 15-360(d) Aff., ¶¶ 96-97).

- A search warrant for text message content from TT#1 and TT#2 had produced no useful information, and the execution of additional search warrants would be premature and would possibly alert targets to the existence of the investigation, thereby jeopardizing it. (*See* 15-360(c) Aff., ¶¶ 85-86; 15-360(d) Aff., ¶¶ 98-99).

- Agents examined discarded trash on one occasion, which proved useless, no trash was available when agents attempted to acquire and search it on several other occasions, and additional attempts to examine trash would be unlikely to assist in achieving the goals of the investigation. (*See* 15-360(c) Aff., ¶¶ 87-91; 15-360(d) Aff., ¶¶ 100-103).

- Administrative subpoenas had been used to obtain telephone records, financial records and rental car records, but the subpoenas had not yielded information sufficient to achieve the goals of the investigation. (*See* 15-360(c) Aff., ¶¶ 92-94; 15-360(d) Aff., ¶¶ 104-106).

- The use of a grand jury was impractical because any witnesses likely would invoke a right not to testify and the issuance of grand jury subpoenas would alert targets to the on-going investigation. (*See* 15-360(c) Aff., ¶¶ 95-96; 15-360(d) Aff., ¶¶ 107-108).

- Toll records and pen register/trap and trace data had been utilized, but such methods were unsuccessful in ascertaining the full scope of the drug trafficking organization or in uncovering the identities of all individuals involved. (*See* 15-360(c) Aff., ¶¶ 97-100; 15-360(d) Aff., ¶¶ 109-112).

- Although agents had been conducting a financial investigation, the records obtained revealed minimal information or otherwise were insufficient to successfully dismantle the organization. (*See* 15-360(c) Aff., ¶¶ 101-103; 15-360(d) Aff., ¶¶ 113-115).

- Agents analyzed social media, but the execution of a search warrant on an Instagram account was of limited value. (*See* 15-360(c) Aff., ¶¶ 104-105; 15-360(d) Aff., ¶¶ 116-117).

As the foregoing illustrates, the Affidavits provide a detailed and comprehensive explanation of the investigative methods that had been used and the limitations of each, thus demonstrating conclusively the necessity of the Title III wiretap interceptions. *See Bailey*, 840 F.3d at 115 ("[f]ar from being inadequate to justify authorization of a wiretap, the government's application here is a textbook model of care and thoroughness. . .").

In sum, upon reviewing the Affidavits in question, Judge Conti, who was the presiding Judicial Officer, approved the Title III interceptions, and expressly found that the necessity requirement of 18 U.S.C. § 2518(3)(c) had been satisfied. (*See* 15-360(c) Order, ¶ 5; 15-360(d) Order, ¶ 5) (concluding the Government "adequately demonstrated that normal investigative procedures have been tried with limited success, reasonably appear unlikely to further succeed if continued, or are too dangerous to attempt."). That finding is entitled to deference by this Court and it otherwise appears that the decision was appropriate and consistent with the prevailing law. *See, e.g.*, *Rivera*, 532 F. App'x at 306 ("[T]he utility of other methods of investigation to obtain some information does not foreclose the possibility that a wiretap is necessary to obtain other information."); *Garvey*, 588 F. App'x at 191 (affirming district court's finding of necessity where affidavit was prepared in detail and recounted several examples of investigative methods that were or could be attempted and why they were or would be ineffective). All told, the Government laid a sufficient factual predicate to justify the necessity of the Title III interceptions. *See McGlory*, 968 F.2d at 345 ("The government need only lay a 'factual predicate' sufficient to inform the judge why other methods of investigation are not sufficient."); *Bailey*, 840 F.3d at 116 ("As long as the wiretap affidavit is prepared in detail, recounting the investigative methods that were attempted and why other methods would prove ineffective, as they were here, we have no difficulty concluding that the district court did not abuse its discretion in determining that the affidavit supported a finding of necessity."). Accordingly, Defendants' necessity argument is without merit, and suppression of the Title III intercepts is not warranted.

**IV. Conclusion**

Based on the foregoing, the Motion to Suppress Title III Intercepts filed by Primm and joined by Scott is DENIED. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: September 26, 2017

cc/ecf: All counsel of record